## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MCC MANAGEMENT OF NAPLES, INC.,      )
et al.,                              )
                                     )
                  Plaintiffs,        )
                                     )
v.                                   )      Case No. CIV-06-1345-M
                                     )
INTERNATIONAL BANCSHARES             )
CORPORATION, et al.,                 )
                                     )
                  Defendants.        )

## ORDER

Before the Court is Defendants' Motion to Dismiss [docket no. 36], filed September 14,

2007.  On October 9, 2007, plaintiffs filed their response, and on October 26, 2007, defendants filed

their reply.  Based upon the parties' submissions, the Court makes its determination.

I.      Background

Prior to 1997, plaintiffs Miles C. and Barron G. Collier ("the Colliers") owned all shares of

Local Financial Corporation ("LFC"), which among other activities operated banks in the Oklahoma

area.  In 1997,  the Colliers and LFC entered into an agreement known as the 1997 Redemption

Agreement whereby the Colliers agreed to sale, and LFC agreed to redeem and purchase, all shares

of LFC for a total of $154 million.  However, the Colliers received only $139 million at the time of

sale with the $15 million difference being placed in escrow.[1]

At the time of the redemption transaction, certain subsidiary banks of LFC were engaged in

unresolved litigation with the Federal Deposit Insurance Corporation ("FDIC").  Pursuant to the

_____

[1]The Colliers each individually assigned certain rights and obligations from the sale to their
respective entities, MCC Management of Naples, Inc. and BGC II Management of Naples, Inc., who
are also plaintiffs in this action.

1997 Redemption Agreement, the Colliers and LFC entered into an escrow agreement concerning various claims and post-closing adjustments in order to provide funds to pay any liability which LFC might ultimately have to pay the FDIC as a result of the pending litigation.  The FDIC litigation involved the 1988 acquisition of insolvent federal savings and loan associations which became subsidiary banks of LFC.  During the acquisition, LFC entered into an agreement with the FDIC whereby the FDIC would make certain assistance payments to LFC in order to help it succeed in operating insolvent institutions.  In addition, LFC was required to pay the FDIC a portion of the income tax benefits it received as a result of these acquisitions.  Congress, however, eliminated certain tax benefits which had been granted to LFC based upon the acquisition, and LFC commenced an action against the FDIC for the loss of these income tax benefits ("FDIC claim").  In response, the FDIC filed a counterclaim against LFC seeking to recover payments owed for the value of income tax benefits LFC received ("FDIC counterclaim").

Two years later in 1999, the Colliers and LFC entered into a settlement agreement which was the first attempt to settle post transaction disputes between the parties.  Specifically, the 1999 Settlement Agreement attempted to resolve issues pending from the 1997 Redemption Agreement, and established the procedure for handling the FDIC dispute.  In 2002, the parties agreed to separately settle the FDIC counterclaim apart from the FDIC claim.  In conjunction therewith, the parties executed the Resolution and Modification Agreement in addition to the FDIC Settlement and Termination Agreement.  Pursuant to the 2002 Resolution and Modification Agreement, the FDIC counterclaim is subject to a mutual limited release provision, and the instant controversy concerns the extent to which this mutual release provision should apply to the FDIC counterclaim.  In addition, the 2002 Resolution and Modification Agreement provides procedures concerning the

FDIC claim including cooperation and disposition of proceeds arising from this claim.

The Colliers, on October 20, 2006, filed a Complaint against International Bancshares Corporation and International Bank of Commerce in the United States District Court for the Middle District of Florida seeking to recover compensatory damages based on income tax deductions taken with regard to the FDIC claim.  Furthermore, also in 2006, defendants International Bancshares Corporation and International Bank of Commerce[2] commenced suit in the United States District Court for the Western District of Oklahoma.  The Florida action was later consolidated with the action in this Court.  On August 20, 2007, plaintiffs Miles and Barron Collier, MCC Management of Naples, Inc. and BGC II Management of Naples, Inc. filed their Consolidated Amended Complaint alleging: (1) breach of the 1997 Redemption Agreement, (2) breach of the 1999 Settlement Agreement, (3) breach of fiduciary duty, (4) constructive fraud, (5) fraud in the inducement, (6) breach of the covenant of good faith and fair dealing, (7) tortious breach of contract, (8) unjust enrichment, (9) fraud and (10)negligent misrepresentation.  Defendants International Bancshares Corporation and International Bank of Commerce now move to dismiss the Consolidated Amended Complaint for failure to state a claim.

II.     Standard for Dismissal

"[A Consolidated Amended] [C]omplaint should not be dismissed for failure to state a claim unless it appears...plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007).  The relevant inquiry is whether the Consolidated Amended Complaint contains enough facts to state a claim to relief that

---

[2]In 2004, defendants International Bancshares Corporation and International Bank of Commerce became the successors in interest to the assets and liabilities of Local Financial Corporation based upon an acquisition.

is plausible on its face. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007). The issue in reviewing the sufficiency of plaintiffs' Consolidated Amended Complaint is not

whether they will prevail, but whether they are entitled to offer evidence to support their claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must assume as true all well pleaded facts

in plaintiffs' Consolidated Amended Complaint and view them in a light most favorable to plaintiffs.

*Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Sutton v. Utah State Sch. For the Deaf and Blind*, 173

F.3d 1226, 1236 (10th Cir. 1999).

III.    Discussion

    A.    The Mutual Release Provision

    According to defendants' interpretation of the 2002 Resolution and Modification Agreement,

the parties intended to release and waive all previous agreements between the parties. Defendants

specifically assert that plaintiffs agreed to a broad release which covers any and all types of claims

or damages. The Mutual Limited Release provision within Section 3 of the 2002 Resolution and

Modification Agreement provides:

> Except as otherwise provided in this Agreement and for the right of
> the parties hereto to fully enforce all of the terms and provisions of
> this Agreement, which shall not be affected in any way by this
> Paragraph 3, the Colliers ... for good and valuable consideration,
> including, without limitation, the transactions contemplated by this
> Agreement, the receipt and sufficiency of which are hereby
> acknowledged, hereby mutually fully release, remise, acquit, satisfy
> and forever discharge the other Group (the "released Group"), of and
> from any and all rights, claims, controversies, investigations,
> demands, damages, indemnities, judgments, executions, actions, suits
> and causes of action of any nature whatsoever, whether known or
> unknown, direct or indirect, including but not limited to claims for
> rescission, restitution, specific performance, accounting, tort, breach
> of contract, breach of fiduciary duty, negligence, fraud and claims
> under all federal and state securities laws, whether arising at law or
> in equity, under local, state or federal laws, which the releasing

> Group or any of them may have had, may now have or may in the
> future have or claim to have had, now have or have, against the
> released Group, or any of them by reason of, arising out of, or based
> upon, any act, omission, occurrence, matter, transaction, event or
> thing which transpired prior to the Effective Date in connection
> which the Redemption Agreement, the Settlement Agreement, the
> FDIC Settlement Agreement and all agreements and other documents
> executed and delivered in connection with such agreements, in any
> such case from the beginning of time to and including the date of this
> Agreement (collectively, the "Claims"), expressly excluding all of the
> obligations of the parties under this Agreement which shall remain
> fully enforceable by them in all respects.

Consolidated Amended Complaint, Exhibit 5, at 7-8.

"[R]elease provisions are contractual, and the language of a contract (release) is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity." *Kay Pharmacal Co. v. Dalious Constr. Co.*, 276 P.2d 756, 758 (Okla. 1954) (internal citation omitted). Furthermore, contractual intent is determined from the entire agreement.  Having reviewed the parties' submissions, and viewing the facts in the light most favorable to plaintiffs, the Court finds that plaintiffs did not release all future claims pursuant to the 2002 Resolution and Modification Agreement.  As stated, the Mutual Limited Release provision commences with the phrase "[e]xcept as otherwise provided in this Agreement ...", express preservation language which suggests that some matters are excluded from the release.  The Court finds the prescribed phrase, coupled with numerous and specific contractual exclusions contained within other provisions of the agreement, demonstrates the release provision is not a complete and full discharge of all claims.

    B.    <u>Waiver Provision</u>

Defendants further assert that the Waiver of Inconsistent Laws provision within the 2002 Resolution and Modification Agreement expressly waived reliance upon any legal doctrine that would limit the scope of the release.  In pertinent part, the Waiver of Inconsistent Laws provision

provides that the "releasing Group, and each of them, hereby waives, to the fullest extent permitted by law, the benefits of any statute, law, rule, regulation or common law, which may limit the scope of the covenants and releases contained herein."  Consolidated Amended Complaint, Exhibit 5, at 8.

In Oklahoma, "a waiver is [a] voluntary relinquishment of a known right, involving holder's intent to abandon rather than insisting upon such right." *Gesell v. Martin*, 463 P.2d 697, 700 (Okla. Civ. App. 1969).  The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made.  *Oxley v. Gen. Atl. Res., Inc.*, 936 P.2d 943, 945 (Okla. 1997).  Furthermore, contracts must be construed in their entirety, and not based upon detached and isolated portions. *Mortgage Clearing Corp. V. Baughman Lumber Co.*, 435 P.2d 135, 138 (Okla. 1967).

Having reviewed the parties' submissions, the Court finds that the Waiver of Inconsistent Laws provision when construed with the entirety of the 2002 Resolution and Modification Agreement does not bar the instant legal challenge.  As stated above, the language of the Mutual Limited Release provision provides for a number of exceptions whereby its provisions do not apply. Accordingly, the Court finds that defendants' motion to dismiss based upon the purported release and waiver of claim should be denied.

C.    Superceding Provision

Defendants assert that the superceding provision of the 2002 Resolution and Modification Agreement express the parties' intent that there would be nothing left of the 1997 Redemption Agreement.  The superceding provision states the following:

> [e]xcept for Section 7 of the Settlement Agreement which will remain
> in full force and effect as originally stated and for the provisions of

6

the Redemption Agreement and of the Settlement Agreement as expressly amended and restated and continued in effect pursuant to Section 5, below, the Redemption Agreement and the Settlement Agreement are, as of the Effective Date, completely superceded and supplanted and replaced in all respects by this Agreement and this Agreement shall hereafter be the sole controlling document between the parties as to the handling of the FDIC Claims without the need of any further action of the parties, provided that this provision shall not in any way be deemed to effect the ability of the parties to this Agreement to fully enforce all of their rights hereunder.

Consolidated Amended Complaint, Exhibit 5, at 8.

In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. *K&K Food Serv., Inc. v. S&H, Inc.* 3 P.3d 705, 708 (Okla. 2000). Having reviewed the parties' submissions, the Court finds that the instant clause expressly limits the extent to which the 2002 Resolution and Modification Agreement supercedes the previous agreements between the parties. Specifically, the instant provision commences with explicit language excluding certain sections and agreements. Accordingly, the Court denies defendants' motion to dismiss as to the basis that superceding provision bars the instant claims.

> D.      The Covered Asset Claim

Defendants next assert that plaintiffs have impermissibly asserted claims for covered assets where the tax basis had been understated. Defendants contend that plaintiffs attempt to impermissibly expand the clause concerning tax consequences from the FDIC counterclaim to the FDIC claim. Specifically, defendants contend the term "net of any related tax benefits" is limited to payments made by LFC to resolve the FDIC counterclaim and nothing more.

In their Consolidated Amended Complaint, plaintiffs allege:

Section 5.1 of the 1997 Redemption Agreement ... specified that the 'Final FDIC Counterclaim Resolution Amount' was 'net of any related tax benefits' thus reserving to the Collier Parties the tax

> benefits of all payments made to the FDIC, and expressly providing
> that LFC/Local would not retain the tax benefit of the funds provided
> by the Collier Parties to pay the FDIC.

Consolidated Amended Complaint, at 6-7.   Furthermore, pursuant to the 1997 Redemption

Agreement, the Final FDIC Counterclaim Resolution Amount means:

> an amount equal to the aggregate amount payable by the Company or
> its Subsidiaries, net of any related tax benefits, in respect of the FDIC
> Counterclaim under the terms of any final settlement, non-appealable
> arbitral award of non-appealable judgment in respect of the FDIC
> Counterclaim, including any pre- and post-judgment interest.

Consolidated Amended Complaint, Exhibit 5, at 4.

When contractual language is clear and unambiguous, the Court must derive the intent of the

parties from the plain language of the contract. *Dillon Family & Youth Serv., Inc. v. Dep't of Human

Serv. of the State of Okla.*, 965 F.2d 932, 934 (10th Cir. 1992).   Having reviewed the parties'

submissions, the Court finds that plaintiffs allegation concerning tax neutrality applies to the FDIC

counterclaim and does not extend to the FDIC claim.   Specifically, the Court finds the Final FDIC

Claim Resolution Amount definition does not reference that the amounts payable are net of any

related tax benefits.   Clearly, if the parties intended the tax neutrality clause to apply to the FDIC

claim, they knew how to specify as much, based on the assertion of tax neutrality set forth in the

definition of the Final FDIC Counterclaim Resolution Amount.

The Court, however, finds that tax neutrality, i.e. the netting of any tax related benefits, does

apply to the Final FDIC Net Resolution Amount to the extent that the Final FDIC Counterclaim

Resolution Amount results in that summation.   Furthermore, the Court finds the best efforts clause,

drafted allegedly to minimize any amounts that plaintiffs would have to pay, is insufficient to

overcome the absence of plain language indicating any corresponding tax neutrality in the FDIC

claim.

Separately, plaintiffs allege that LFC took tax deductions for covered assets after they were no longer shareholders of the company.  Plaintiffs contend that they should recover for the tax deductions because they are part of the aforementioned "net of tax benefits in respect of the FDIC Counterclaim" clause.  Having carefully reviewed the Consolidated Amended Complaint, and accepting as true all well-plead facts and viewing those facts in the light most favorable to plaintiffs, the Court finds that plaintiffs have sufficiently plead their claims concerning the post-redemption tax deductions on covered assets.  Specifically, plaintiffs have alleged that LFC failed to disclose information about amended tax returns where defendants accrued tax benefits and refunds related to the 1997 Redemption Agreement.  Defendants failed to pay, and plaintiffs contend they are owed reimbursement pursuant to these amended tax returns.

Accordingly, the Court grants defendants' motion to dismiss regarding tax neutrality arguments as applied to the FDIC claim.  The Court, however, denies defendants' motion to dismiss concerning post-redemption tax deductions on covered assets.

E.      Attorneys Fees Claim

Plaintiffs allege entitlement to the tax benefit of the attorneys fees paid for representing LFC in the FDIC dispute.  Plaintiffs allege defendants took tax deductions for attorneys fees to pursue the FDIC dispute.  On the other hand, defendants allege that the provision allowing tax neutrality does not extend to attorneys fees.  Furthermore, defendants contend the provisions concerning the payment of attorneys fees were not set forth in any provisions of the instant agreement.

Having reviewed the parties' submissions, and the plain language of the agreement, the Court finds that plaintiffs may assert a claim concerning related tax benefits claimed as a result of

attorneys fees.  The Court finds the above-mentioned tax neutrality clause set forth in the Final FDIC Counterclaim Resolution Amount definition is sufficiently broad to cover a multitude of tax benefits types, and attorneys fees are merely one type of allowable related tax benefit as long as it concerns the FDIC Counterclaim.  Accordingly, the Court denies defendants' motion to dismiss as to the attorneys fees claim.

F.     Misrepresentation

Defendants assert the Consolidated Amended Complaint contains a number of allegations that plaintiffs were entitled to the economic benefit of a tax deduction for the payment of the amount of the principal paid to the FDIC in the FDIC Counterclaim settlement, and misrepresentations of law occurred as a result.  Plaintiffs dispute defendants' characterization of their claims as based on misrepresentation of law rather than misrepresentation of fact.  Furthermore, plaintiffs allege the existence of superior knowledge by defendants as support for their misrepresentation claims.

The State of Oklahoma "recognizes the rule that misrepresentations of law do not form the predicate for an action based on fraud." *Ford Motor Credit Co. v. Milburn*, 615 F.2d 892, 895 (10th Cir. 1980).  However, where the person making the misrepresentation has superior means of information, the injured party is entitled to relief as if the representation had been made concerning a matter of fact.  *Id.*; *Nesbitt v. Home Fed. Savings & Loan Assn.*, 440 P.2d 738, 743 (Okla. 1968). Having reviewed the Consolidated Amended Complaint, the Court finds that plaintiffs have sufficiently pled allegations of superior knowledge as to their misrepresentation claims. Accordingly, the Court denies defendants motion to dismiss as to the misrepresentation claims.

G.     Fraud

Defendants assert that plaintiffs pled certain allegations concerning their fraud, constructive

fraud and misrepresentation claims based upon information and belief.  In some cases, defendants contend that plaintiffs lack the requisite specificity required by Federal Rule of Civil Procedure 9, and that fraud pleading cannot be based upon information and belief.

Pursuant to Federal Rule of Civil Procedure 9(b), with respect to averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity."  Accordingly, to survive a motion to dismiss, an allegation of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  While fraud pleadings generally may not be pleaded on information and belief, an exception exists "as to facts peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of fact upon which the belief is founded." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988).  *See also, Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

Having reviewed the Consolidated Amended Complaint, the Court finds plaintiffs have sufficiently pled allegations that facts at issue were peculiarly within defendants' knowledge.  Furthermore, the Court finds that the remaining allegations concerning fraud which were not based upon information and belief are pled with particularity.  Accordingly, the Court denies defendants' motion to dismiss as to the fraud claims.

H.      Federal Securities Law Claim

Defendants next assert that plaintiffs have no standing to allege fraud based upon federally imposed reporting requirements in the Securities Exchange Act of 1934, the Securities Act of 1933, or the Sarbanes-Oxley Act.  Courts have repeatedly rejected attempts to recognize a private right of action to anyone to whom remedial provisions of the acts were designed to protect.  *See, e.g.,*

11

*Phillips v. TPC Comm., Inc.*, 532 F. Supp. 696, 699 (W.D. Pa. 1982).  Having reviewed the parties' submissions, the Court finds that the above-mentioned securities acts and regulations do not provide plaintiffs with a private right of action.  The Court, therefore, grants defendants' motion to dismiss as to securities acts and regulations.

> I.       Unjust Enrichment Claim

Defendants also assert that the 1997 Redemption Agreement, 1999 Settlement Agreement and the 2002 Resolution and Modification Agreement properly address all the issues between the parties.  Therefore, defendants contend there can be no recovery under theories of unjust enrichment. When a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment.  *Member Serv. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. Of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997).  Having reviewed the Consolidated Amended Complaint, the Court finds that plaintiffs have properly pled theories of recovery under quasi-contract.  Specifically, the Court finds these theories were pled as alternative theories of recovery and, in some instances, there exist no contractual provisions covering the subject matter of the parties' dispute.  Accordingly, the Court denies defendants' motion to dismiss as to unjust enrichment.

> J.       FDIC Claim

Finally, defendants assert that they have retained sums of money they are properly entitled to receive pursuant to the 2002 Resolution and Modification Agreement and distributed the rest of the proceeds to plaintiffs.  Therefore, defendants contend that the FDIC claim should be dismissed. Having reviewed the Consolidated Amended Complaint, the Court finds plaintiffs have pled fraud-related theories concerning the FDIC claim.  As set forth above, claims for fraud and fraud in the

inducement are not necessarily premised on the construction of a contract.  Accordingly, the Court

denies defendants' motion to dismiss as to the FDIC claim allegations.

IV.   Conclusion

     For the reasons set forth in detail above, the Court hereby GRANTS IN PART and DENIES

IN PART defendants' motion to dismiss as follows:

    (A)    The Court GRANTS the Motion to Dismiss as to plaintiffs' claims concerning federal securities law.

    (B)    The Court DENIES the Motion to Dismiss as to plaintiffs' claims concerning the mutual release provision, waiver provision, superceding clause provision, covered assets, attorneys fees, misrepresentation, fraud, unjust enrichment and the FDIC claim.

    **IT IS SO ORDERED this 14th day of May, 2008**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

13